Mary SKAGGS and James Skaggs *v.* Philip JOHNSON, M.D., and Richard Nix, M.D., Individuals, and Little Rock Orthopedic & Sports Medical Center

95-982 915 S.W.2d 253

Supreme Court of Arkansas
Opinion delivered February 12, 1996

*Satterfield Law Firm*, by: *G. Randolph Satterfield* and *Diana Hamilton Turner*, for appellants.

*Friday, Eldredge & Clark,* by: *Guy Alton Wade* and *Clifford W. Plunkett,* for appellees.

BRADLEY D. JESSON, Chief Justice. This is a medical malpractice case. Appellants Mary and James Skaggs appeal from a trial court's order granting summary judgment in favor of appellees, Drs. Philip Johnson and Richard Nix and the Little Rock Orthopedic & Sports Medical Clinic. On appeal, the Skaggses argue that the trial court erred in granting summary judgment and in ruling that expert testimony was necessary to meet their burden of proof. We affirm.

Mary Skaggs was in an automobile accident and suffered a compound fracture of her right leg on September 21, 1992. Approximately one inch of bone was exposed, and the wound was extremely dirty from the accident. Dr. Philip Johnson, an orthopedic surgeon at Little Rock Orthopedic & Sports Medical Clinic ("the Clinic"), performed surgery on Mary's leg to repair the fracture. A penrose drain tube was placed in her leg to drain any infectious materials from the wound. Three days after the surgery, appellee Dr. Richard Nix, another orthopedic surgeon at the Clinic, was making rounds and pulled the penrose drain tube out of Mary's leg. He experienced difficulty in removing the drain and believed that a portion of it could have been left inside. Both surgeons decided to leave the piece of tube inside Mary's leg, as they believed that irrigating and probing the wound further could cause greater potential for infection. Mary was discharged.

Dr. Johnson continued to treat Mary during subsequent visits. On December 22, 1992, early union of the bones in her leg became apparent. One month later, redness and swelling were noted, and Mary was treated with oral antibiotics. On March 15, 1993, Mary underwent surgery, during which a five millimeter piece of penrose drain tube was removed from her leg. Dr. John Schultz, a lung and infectious disease specialist, was consulted to administer antibiotics.

On March 7, 1994, Mary Skaggs and her husband, John Skaggs, filed a complaint against Drs. Johnson and Nix and the Clinic, alleging medical malpractice. They claimed that the doctrine of *res ipsa loquitur* applied on the basis that the portion of the penrose drain tube left in Mary's leg was a foreign object

within the exclusive control of the defendants. The Skaggses claimed that Mary suffered osteomyelitis, an infection of the bone.

The physicians and the Clinic filed a motion for summary judgment on April 28, 1995. Attached to the motion along with pleadings and medical records were the affidavits of Drs. Johnson, Nix, and Michael Weber, an expert orthopedic surgeon, all of whom refuted the Skaggses' allegations of negligence and proximate cause. Particularly, Dr. Weber averred that he was aware of the degree of skill and learning ordinarily possessed and used by members in the medical profession in good standing engaged in the practice of orthopedic surgery in Little Rock. Based on his review of the case, it was Dr. Weber's opinion that Drs. Johnson and Nix used and applied their best judgment with reasonable care. Dr. Weber found no evidence of negligence or proximate causation.

In response, the Skaggses maintained that no expert testimony was necessary. The Skaggses also pointed to the deposition of Dr. Schultz, in which he averred that the piece of penrose drain left in Mary's leg probably caused her infection and should have been removed. Following a hearing, the trial court granted the appellees' motion for summary judgment. In making its ruling, the trial court acknowledged Dr. Schultz's opinion; however, it concluded that, while his opinion was general and based on his opinion as an infectious disease expert, it did not address the surgical decision by an orthopedist. The trial court entered an order dismissing the case, from which the Skaggses now appeal.

 Our standards for summary judgment review can be summarized as follows:

> In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Nixon* v. *H & C Elec. Co.*, 307 Ark. 154, 818 S.W.2d 251 (1991). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Cordes* v. *Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). All proof submitted must be

viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Lovell v. St. Paul Fire & Marine Ins. Co.*, 310 Ark. 791, 839 S.W.2d 222 (1992); *Harvison v. Charles E. Davis & Assoc.*, 310 Ark. 104, 835 S.W.2d 284 (1992); *Reagan v. City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991). Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law. Ark. R. Civ. P. 56(c); *Short v. Little Rock Dodge, Inc.*, 297 Ark. 104, 759 S.W.2d 553 (1988); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

*Oglesby* v. *Baptist Medical System*, 319 Ark. 280, 891 S.W.2d 48 (1995)(other citations omitted). We have recently reviewed the elements necessary to sustain a claim for medical malpractice in *Robson* v. *Tinnin*, 322 Ark. 605, 911 S.W.2d 246 (1995):

[T]o sustain a claim for medical malpractice a plaintiff must prove, among other elements, the applicable standard of care and the defendant's breach thereof. The standard of care applicable to a case is defined by statute as "the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he practices or in a similar locality." Ark. Code Ann. § 16-114-206(a)(1) (1987).

322 Ark. at 611, 911 S.W.2d at 249.

■ On appeal, the Skaggses continue to assert that no expert testimony was required in this case, as the asserted negligence was within the comprehension of the jury, who could infer that the appellees' acts or omissions constituted proximate cause of Mary's damages. They contend that Dr. Schultz's deposition, in which he averred that the piece of penrose drain left in Mary's leg probably caused her infection and should have been removed, presented a fact question that was sufficient to survive a motion for summary judgment. The guidelines for determining whether expert testimony is required in a medical malpractice

case are as follows:

> It is well settled that a plaintiff must present expert testimony when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge, when the applicable standard of care is not a matter of common knowledge, and when the jury must have the assistance of experts to decide the issue of negligence.

*Robson* v. *Tinnin*, 322 Ark. at 610-611, 911 S.W.2d. at 249; *Prater* v. *St. Paul Ins. Co.*, 293 Ark. 547, 739 S.W.2d 676 (1987).

The Skaggses further maintain that the Arkansas Court of Appeals's decision in *McClain* v. *Giles*, 271 Ark. 176, 607 S.W.2d 416 (Ark. App. 1980), is controlling. We disagree. In that case, plaintiffs McClain sued Dr. Giles for medical malpractice, alleging that the surgeon had improperly used a knife during Mrs. McClain's disc surgery, causing it to break. Dr. Giles made a medical decision to leave the tip in Mrs. McClain's back rather than risk nerve damage by trying to remove it. A jury trial was waived, and the trial judge ruled that Dr. Giles was not negligent. The McClains appealed on the ground that the decision was clearly against the preponderance of the evidence, and the Court of Appeals affirmed. In so holding, that court neither was presented with nor addressed the issue of whether the case was a "foreign object" case excepting the McClains from the expert testimony requirement.

■ In this case, Drs. Johnson and Nix made a conscious, medical decision to leave the piece of penrose drain tube in Mary's leg. As such, this case is distinguishable from a typical foreign object case, as those cases involve the inadvertent leaving of objects in a patient's body, and do not involve a physician's judgment. *See, e.g., Lanier* v. *Trammel*, 207 Ark. 372, 180 S.W.2d 818 (1944)(matters of common knowledge include a surgeon's failure to sterilize his instruments prior to operating or to remove a sponge before closing an incision). Therefore, we conclude that this case presented an issue outside the jury's common knowledge that required expert testimony. *See, e.g., Robson* v. *Tinnin, supra*, (matters relating to the changing of dental implants and treatment of fractured teeth were not matters of common knowledge). Our position is supported by caselaw in

other jurisdictions. *See, e.g., Wagner* v. *Deborah Heart & Lung Center,* 588 A.2d 860 (N.J. Super. 1991)(dismissal proper where plaintiff failed to present expert testimony that a cardiothoracic surgeon deviated from the appropriate standard of care where surgeon made a medical decision to leave needle fragment in patient's sternum rather than interrupt the closure procedure); *Cebula* v. *Benoit,* 652 S.W.2d 304 (Mo. App. 1983)(directed verdict proper where plaintiff failed to present required expert testimony that thoracic surgeon who made a medical decision to leave needle fragment in patient's chest acted inconsistently with general medical practice); *Williams* v. *Dameron,* 246 S.E.2d 586 (N.C. App. 1978)(directed verdict proper where plaintiff failed to prove negligence or causation by expert testimony or otherwise where surgeon exercised medical judgment in knowingly leaving a scalpel tip in plaintiff's back); *Johns Hopkins Hospital* v. *Genda,* 258 A.2d 595 (Md. 1969)(jury verdict reversed where plaintiffs failed to present evidence that surgeons deviated from the applicable standard of care where surgeons made medical decision to leave a broken needle tip in body of plaintiffs' minor child).

■ We agree with the trial court's finding that Dr. Schultz's opinion was general and based on his experience as an infectious disease expert, and did not address a surgical decision by an orthopedist. Dr. Schultz did not offer testimony that the conduct of Drs. Johnson and Nix fell below the standard of care for orthopedic surgeons in Little Rock. To the contrary, Dr. Schultz stated in his deposition that it was a surgical decision whether Dr. Nix should have gone in and tried to remove the piece of tubing. As in *Robson* v. *Tinnin, supra,* the appellees met their burden of proving a prima facie case for summary judgment by showing that the Skaggses had no expert to testify as to the breach of the applicable standard of care. The burden shifted to the Skaggses to show that a disputed issue of fact existed, and their failure to do so excused the need for the physicians to show a lack of proof on the element of proximate causation. *Id.* at 612. Accordingly, we must affirm the trial court's order of dismissal.

Affirmed.

Brown, J., not participating.